UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Paul Hupp,

                                    Petitioner,

v.

Kamala Harris,

                                    Respondent.

Case No.: 16-cv-00767-GPC-JLB

**Report and Recommendation**

# I. INTRODUCTION

On March 31, 2016, Petitioner Paul Hupp ("Petitioner"), an individual under supervision of the Riverside County Probation Department proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition") in federal court pursuant to 28 U.S.C. § 2254. (ECF No. 1.) He challenges his 2013 state court convictions in the Superior Court of San Diego County, Case No. SCD238651, for stalking in violation of a court order, making a criminal threat, and disobeying a court order. (*Id*.; ECF No. 6-29 at 10-11.)[1] On April 5, 2016, the Court issued a Notice Regarding Possible Failure to Exhaust and One-Year Statute of Limitations. (ECF No. 3.) On May 3, 2016 Respondent filed her Answer and Memorandum of Points and Authorities in Support of the Answer ("Answer"). (ECF Nos. 5-6.) On July 8, 2016, Petitioner filed his Opposition to Respondent's Answer ("Traverse"). (ECF No. 8.) On February 21, 2018, this case was transferred to the undersigned magistrate judge. (ECF No. 18.)

---

[1] Citations to documents filed on the public docket of this action refer to the pagination assigned by the CM/ECF system.

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. The Court has read and considered the Petition, the Answer, the Traverse, the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court RECOMMENDS the Petition be DENIED.

## II. BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1). Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See id.*; *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).

On January 8, 2015, the California Court of Appeal filed its reasoned opinion ruling on Petitioner's direct appeal of his 2013 state court judgment convicting him of stalking in violation of a court order, making a criminal threat, and disobeying a court order.[2] (ECF No. 6-29.) Accordingly, the following facts are taken entirely from the California Court of Appeal's opinion:[3]

*Letters Sent by Defendant in 2000 and 2006*
*Concerning Freedman's 1998 Administrative Decision*

In June 1998, victim Jeffrey Freedman, sitting as a pro tem administrative law judge (ALJ), presided over an administrative hearing to adjudicate an appeal filed by defendant to challenge a decision by the California Commission on Teacher Credentialing (Commission) denying defendant's application to obtain an emergency permit to be a substitute teacher. Freedman submitted a written proposed decision unfavorable to

---

[2] The judgment against Petitioner also included a conviction for simple stalking (count 1), but the Court of Appeal modified the judgment to dismiss the count 1 simple stalking conviction. (ECF No. 6-29 at 22-27.) In all other respects, the judgment was affirmed. (*Id.* at 27.)

[3] All footnotes within the quoted text (footnotes 4–9 of this Report and Recommendation) are quoted directly from the Court of Appeal's opinion. The Court of Appeal utilizes the term "defendant" to refer to Petitioner.

defendant, which was adopted by the Commission. Defendant filed a petition for writ of mandate in superior court, and in September 1999 the trial judge ruled in defendant's favor, finding that the Commission's findings did not support that defendant was unfit to teach and ordering the Commission to grant his application for a teaching permit.[4]

Notwithstanding his ultimate success in the mandamus proceedings, defendant was extremely upset by Freedman's 1998 decision. In February 2000 and June 2006, defendant sent letters to Freedman at his home address expressing his sentiments in a derogatory and expletive-laden style. The February 2000 correspondence was in an envelope addressed to "Jeffery 'Dickhead' Freedman"; it included a handwritten note stating "Pull your head out of your ass!"; and it enclosed a copy of the 1999 mandamus order overturning the Commission's denial of defendant's teaching permit application. The June 2006 correspondence consisted of a lengthy typewritten letter which was addressed to "Bozo Freedman" and which contained numerous attacks on the 1998 decision and Freedman himself, stating such things as the decision was "one of the worst administrative law decisions in California history"; it was either a "set up" or Freedman was a "stupid motherfucker"; Freedman was a "cock sucking liar" and "cock sucking piece of shit"; Freedman misrepresented and made up evidence; based on the "lies and damage" Freedman had caused it was a miracle that "nothing has happened" to him; Freedman "better learn to treat people in a fair and decent manner—do you understand me bitch?"; and Freedman had "a beautiful home." Defendant included a copy of the 1998 administrative decision with

---

[4] The basis for the Commission's denial of defendant's teaching permit application arose from defendant's 1982 misdemeanor conviction for contributing to the delinquency of a minor. Defendant (then age 21) pled no contest to this offense based on an incident in which he and another 21-year-old male were in a car drinking beer with two girls ages 14 and 15. In 1987, defendant applied for a certificate of clearance from the Commission to allow him to obtain a teaching credential. Defendant failed to disclose his 1982 conviction in this application, and due to this nondisclosure and an assessment that his offense involved moral turpitude, the Commission declined to issue the certificate of clearance. In 1997, defendant obtained an expungement of his 1982 conviction. That same year, defendant submitted an application for an emergency substitute teaching permit; the Commission's executive director denied his application for the same reasons used to deny him the certificate of clearance in 1987; and defendant requested an administrative hearing to review the executive director's denial. After hearing the evidence presented at the administrative hearing, Freedman concluded denial of a substitute teaching permit was warranted because defendant's 1982 conviction involved acts of moral turpitude and directly related to his fitness to teach, and defendant failed to disclose this conviction in his 1987 application for a certificate of clearance.

handwritten comments referring to portions of the opinion and containing numerous additional derogatory statements and obscenities.[5]

Freedman testified that about four months before he received the June 2006 correspondence, he began receiving obscene phone calls at home from a caller who said Freedman's name and then used "a stream of obscenities" that matched the obscenities used in the June 2006 letter, stating for example, " 'Hey motherfucking cocksucker. Hey, Jeff, you are a fucking cocksucker."

After receiving the June 2006 letter, Freedman applied for a restraining order prohibiting defendant from contacting him. In his written opposition to the restraining order application, defendant asserted that his letter was constitutionally protected free speech and it contained no threats, and repeatedly accused Freedman of fabricating information in the restraining order request and in his 1998 administration decision.[6] After holding a hearing, the court granted a three-year restraining order, which expired on July 7, 2009.

*Anonymous Letters Sent to Freedman in 2009 and 2010,*
*and 2010 Restraining Order Against Defendant*

Shortly after the expiration of the three-year restraining order issued in 2006, Freedman again started receiving letters, but this time they were anonymous. These anonymous letters form the basis for the stalking and other charges brought in the criminal proceeding at issue in this appeal.

The first anonymous letter, sent in September 2009 to both Freedman's home and office, consisted of a short typed note stating, "Hey you little cock sucking mother fucker-have you lied under oath recently you little fucking bitch? . . . [¶] Why don't you do the world a favor and get cancer and DIE. [¶] Because the world will be a much better place without a perjuring piece

---

[5] Defendant's handwritten annotations on the administrative opinion stated such things as "piece of bullshit"; "you mother fucking liar"; "more bullshit"; "piece of shit liar"; "<u>wrong</u> code section Einstein"; "total bull shit"; "petty crime asshole"; "hey dickhead—did they teach you the 1st am. in law school?"; "total bullshit pulled out of your ass"; "you fucking retard"; "ass clown"; "<u>one</u> thing your pea brain got right"; and "Hey Jeff Go <u>Fuck</u>! Yourself! You cock sucking loser!"

[6] For example, defendant's opposition stated that Freedman "made numerous false statements and fabricated false evidence" in his 1998 administrative decision; Freedman's "fabrication of false evidence is well documented by the reversal of his administrative decision"; Freedman's claims in the restraining order application contain "false fabrication[s]"; Freedman "has a history of making false accusations [and] fabricating evidence"; and Freedman "tries to manipulate evidence."

of shit like you in it." Freedman testified he was certain the letter was from defendant, explaining the language was similar to the 2006 letter from defendant; Freedman had testified at the hearing on his 2006 restraining order application; no one else had ever accused him of lying under oath; and he had "no feuds, no vendettas, no arguments with anybody on earth other than the letter that [he] got from [defendant] in 2006."

In March and September 2010, Freedman received additional anonymous typed letters at his home and office, which used similar language to call Freedman obscene names and accuse him of perjury.[7] Freedman obtained a temporary restraining order (TRO) in March, but it was dissolved after multiple unsuccessful attempts to serve defendant. After receiving the September 2010 letter, Freedman sought legal assistance from the office of administrative hearings, which arranged for the Attorney General's office to assist him. Represented by a deputy attorney general, on October 14, 2010, Freedman obtained another TRO, with a hearing set for November 15, 2010. The TRO was served on defendant on October 27, 2010. Two days later, on October 29, another anonymous typed letter was sent to Freedman's home and office, stating, "What did I tell you fuck head, your perjuring days are over. [Freedman's home address]."

In a written response to Freedman's 2010 restraining order application, defendant claimed Freedman was attempting to "frame" him by making "false and unsupported accusations," which was Freedman's "pattern and practice" as shown by his "false and fabricated" 1998 decision which tried to deny defendant his "rights and livelihood to become a teacher."

Defendant failed to appear at the November 15, 2010 hearing, and the court imposed another three-year restraining order, to expire on November 14, 2013.

*Anonymous Letters Sent in 2011, Contempt Conviction,*
*and Other Actions by Defendant*

After issuance of the 2010 restraining order, additional anonymous typed letters were sent to Freedman's home and office in January and

---

[7] The March 2010 letter stated: "Your PERJURYING days are OVER you little cock sucking piece of shit. [¶] You can run but you can't hide [¶] Remember that you little bitch [¶] . . . [Freedman's home address]" The September 2010 letter stated: "What did I tell you bitch [¶] Your perjuring days are over you cock sucking mother fucker [¶] Remember that the next time you think about committing perjury you little fucking cock sucker."

February 2011.  The January letter stated: "Your perjuring days are over you cock sucking little bitch, remember that because there is not a rock on the face of this earth you are going to be able to hide under[.]"  The February letter stated: "Your perjuring days are over motherfucker.  [¶]  Remember that you cock sucking piece of shit [Freedman's home address]."

After receiving the January and February 2011 letters, on July 12, 2011, Freedman filed an order to show cause (OSC) to hold defendant in contempt for violating the 2010 restraining order.  Defendant appeared at an ex parte hearing on July 20, and the matter was set for a full hearing.  About one week after the ex parte hearing, on July 28, 2011, another anonymous typed letter was sent to Freedman's home.  The letter stated: "[Freedman's home address] you perjuring motherfucker  [¶]  your perjuring days are over cocksucker."

While the hearing on the contempt petition was pending, in October 2011 defendant filed a federal lawsuit against Freedman in which he complained about the 1998 administrative proceeding, stating that Freedman framed him, improperly failed to disclose that he was a pro tem ALJ, made false and fabricated statements in his decision, and defrauded defendant out of "[l]iterally millions of dollars."

The contempt petition was adjudicated in November 2011, with defendant in attendance.  The court found defendant in contempt, and ordered him to serve 25 days in custody, with a report date of January 3, 2012.  On December 19, 2011, defendant's federal lawsuit against Freedman was dismissed with prejudice.

On December 27, 2011 (one week before defendant's date to report for custody), another anonymous typed letter was sent to Freedman's home, stating: "Your perjuring days are over you cocksucking motherfucker we'll see how much perjury you do with your brains splattered all over the wall the end will come at a time and place of my choosing you little fucking bitch[.]"  Freedman contacted the police, and the police recommended that he and his wife leave town.

On January 13, 2012, the district attorney's office filed the stalking and other charges at issue in the case before us.  Freedman received no more threatening letters after the December 2011 letter.  Freedman testified that he was certain all the anonymous letters were sent by defendant, explaining that defendant was the only person who had made accusations that Freedman had committed perjury, ruined his life, and conspired to frame him.

Defendant did not dispute that he sent the letters to Freedman in 2000 and 2006 which referenced the 1998 administrative hearing, but claimed he did not send the anonymous letters that were sent starting in 2009.

Testifying on his own behalf, defendant stated that while his substitute teaching permit application was pending he had obtained teaching jobs and was doing well; the Commission's denial of his permit caused him to lose these jobs; and even after the superior court overturned the Commission's denial he was unable to get rehired in the teaching field because too much time had passed, he would have had to return to school to retake credentialing classes, and he lacked the funds to do this. Defendant maintained that because of the Commission's denial of his teaching permit, his career and future "had basically been destroyed." After losing his teaching career, he obtained a law degree from a school in another state so he could learn to defend himself; the California State Bar initially granted him the required background clearance and he took the California bar examination several times; but in 2005 or 2006 when he did not pass the California bar examination and had to renew his clearance application, the clearance was denied.

Concerning his communications to Freedman, defendant explained that after the superior court judge overturned the Commission's denial of his teaching permit, he sent the 2000 letter because he wanted Freedman to know "what an idiot he was." He sent the 2006 letter because during this time period he re-read Freedman's administrative decision to get information for his bankruptcy case that he was filing, and he noticed how "bad" the administrative decision was now that he had a legal education. He acknowledged he was "very angry" and writing the letter made him feel less angry, but denied that he intended the letter to be a threat.

Defendant stated that during the time period of the anonymous letters, he was occupied with filing numerous lawsuits in which he represented himself about a variety of matters, and he filed these lawsuits to stand up for himself and others who could not defend their rights. He testified that he viewed the various judges who ruled against him as "lying," committing "perjury," and "railroad[ing] the poor and innocent," and he used derogatory language in pleadings and documents he filed concerning these judges because he was "blowing off steam" and the judges oppressed and "steamroll[ed] little people all the time" and he wanted them to know how he

16-cv-00767-GPC-JLB

felt.[8]  To support that he did not send the anonymous letters received by Freedman, he noted that he identified himself in these materials concerning the various judges.  He stated that when he was upset with Freedman he sued him, and he had no reason to send Freedman anonymous letters and he had no idea who sent them.

### Jury Verdict and Sentence

Defendant was charged with simple stalking between September 30, 2009 and December 29, 2011 (count 1, Pen. Code, § 646.9, subd. (a))[9]; stalking in violation of a court order between October 29, 2010 and December 29, 2011 (count 2, § 646.9, subd. (a)); making a criminal threat between December 27 and 29, 2011 (§ 422); and misdemeanor disobeying a court order between December 27 and 29, 2011 (§ 166, subd. (a)(4)).  The jury found defendant guilty as charged.

At sentencing, the court selected a three-year term for count 2 stalking in violation of a court order and a concurrent term for count 1 stalking, and stayed the terms for counts 3 and 4.  The court suspended execution of the sentence and granted defendant probation conditioned on a one-year jail sentence.

(ECF No. 6-29 at 2-11 (alterations in original).)

Petitioner appealed his convictions to the California Court of Appeal.  Petitioner argued he was deprived of a fair trial due to his counsel's ineffectiveness in failing to move to exclude evidence of his 2011 contempt conviction since it was obtained through a violation of his *Brady* rights, the prosecutor's misconduct in presenting the jury with collateral, irrelevant, and prejudicial matters, and the trial court's erroneous rulings permitting the prosecutor to impeach the defendant with collateral matters over defendant's objections.  (ECF No. 6-26.)  In January 2015, the California Court of Appeal found no

---

[8] In these various pleadings and documents, defendant stated such things as " 'slimeball, piece of shit, ass clown judges' "; " 'you cocksuckers are now on notice' "; " 'the days of dirty judges violating the Constitution with impunity are over' "; " 'civil unrest is going to start at the doorsteps of dirty slimeball judges who lie, commit perjury, and conspire with others to violate constitutional protections under color of authority' "; "I don't know how many dicks this pond scum, ass clown [judge] sucked to get appointed"; and "fuck you, [judge]."

[9] Subsequent unspecified statutory references are to the Penal Code.

error but did find Petitioner could not be convicted of a second stalking charge. (ECF No. 6-29.)

Petitioner then filed a petitioner for review with the California Supreme Court in February 2015. (ECF No. 6-30) Petitioner argued that the Supreme Court should grant review to determine:

> (1) whether his 2011 contempt conviction was obtained in violation of his *Brady* rights;
>
> (2) whether the prosecutor committed prejudicial misconduct by (a) repeatedly insinuating that petitioner was attempting to commit a sex crime in 1982, (b) repeatedly insinuating that petitioner was withholding evidence, and (c) by improperly introducing irrelevant evidence and impeaching petitioner on collateral matters, such as petitioner's ability to work, the validity of his 1982 conviction, his history of name-calling and accusations against other people in the legal community, and his misunderstandings of legal concepts in other legal proceedings; and
>
> (3) whether his due process rights were violated by the trial court erroneously permitting the prosecutor to impeach petitioner with irrelevant and collateral matters.

(*Id*.) In April 2015, the California Supreme Court denied the petition without comment. (ECF No. 6-31.)

On March 31, 2016, Petitioner filed the instant Petition. Petitioner alleges that his Petition for Writ of Habeas Corpus should be granted on the following six grounds:

> (1) Ground 1 - Prosecutorial misconduct because the prosecutor "used an illegally obtained 1982 conviction for contributing to the delinquency of a [minor] misdemeanor conviction from 1982 to vouch for and bolster current charges;"
>
> (2) Ground 2 - Ineffective assistance of trial counsel because "Counsel allowed 1982 misdemeanor conviction to be used at trial, should have been 100% excluded. The conviction was invalid and stale;"
>
> (3) Ground 3 - Prosecutorial misconduct arising from "Use of invalid 1982 misdemeanor conviction of contributing to the delinquency of a minor. [¶] The 1982 conviction was invalid for violating the 5th, 6th and 14th Amendments;"

(4) Ground 4 - Prosecutorial misconduct due to "Failure to turn over exculpatory evidence in prior contempt of court case that was used to vouch for and bolster current charges;"

(5) Ground 5 - Prosecutorial misconduct arising from "Use of prior contempt of court case, where exculpatory evidence was withheld, used to vouch for and bolster current charges;" and

(6) Ground 6 - Prosecutorial misconduct because the "Prosecutor used an invalid 1982 conviction, contributing to the delinquency of a minor to vouch for and bolster the current charges. The conviction was invalid as it violated the 4th, 5th, 6th and 14th Amendments."

(ECF No. 1 at 5-17.)

## III. SCOPE OF REVIEW

Title 28 of the United States Code, section 2254, provides the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") also govern habeas corpus claims. *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997) (holding that federal courts reviewing any habeas petition filed in federal court after the April 24, 1996 enactment of AEDPA will apply its provisions). AEDPA amended 28 U.S.C. § 2254(d), which now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where there is no reasoned decision from the state's highest court, the federal habeas court "looks through" to the underlying appellate decision in applying AEDPA. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991); *see also Harrington v. Richter*, 562 U.S. 86, 99–100 (2011) (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits of the claim and is entitled to deference unless "there is reason to think some other explanation for the state court's decision is more likely").

# IV. DISCUSSION

## A. Requests for Judicial Notice

In his traverse filed on July 8, 2016 (*nunc pro tunc*), Petitioner requests that this Court take judicial notice of:

(1) "Contra Costa County Municipal Court Case; *People v. Paul Hupp*, Case No.: 82-041168[], Criminal Docket, dated <u>October 15, 1982</u> (Three (3) pages total);"

(2) "San Diego County Sheriff's Department Regional Crime Laboratory Report; 'Dan Schmitt'; File No.: 1000222, 'Bates Page Stamped #45-#48', dated <u>May 3, 2011</u> (Four (4) pages total); 'Laboratory Service Report' 'Bates Page Stamped #48', dated <u>March 17 2011</u>;"

(3) "San Diego County Sheriff's Department Regional Crime Laboratory Report; 'Schmitt #031826'; File No.: 1000222, 'Bates Page Stamped #49', dated <u>May 5, 2011</u> (one (1) page total);"

(4) "Email from Paul Hupp to William Kiernan-Office of Independent Counsel (Public Defender); RE: written discovery request for exculpatory and material evidence for <u>November 4, 2011</u>, Order to Show Cause Hearing dated <u>October 28, 2011</u> (two (2) pages total);"

(5) "California Supreme Court Case; <u>Paul Hupp v. San Diego Superior Court et al</u>, Case No.: S199104, State Habeas Corpus Petition, dated <u>December 24, 2011</u> (Eighteen (18) pages total);"

(6) "California District Court of Appeal, Fourth District, Division One Case; <u>Paul Hupp v Jeffrey Howard Freedman</u>, Case No.: D058726, Writ of Supersedeas, dated <u>December 26, 2011</u> (Twenty-two (22) pages total);"

(7) "United States District Court, Southern District of California Case; <u>Paul Hupp v. San Diego Superior Court et al</u>, Case No.: 1 1-cv-02909 IEG (RBB), Declaration Supporting Habeas Corpus Petition dated <u>January 3, 2012</u> (Five (5) pages total);"

(8) "United States District Court, Southern District of California Case; <u>Paul Hupp v. San Diego Superior Court et al</u>, Case No.: 12-cv-00274 WQH (IMA), Brief Supporting First Amended Habeas Corpus Petition dated <u>February 15, 2012</u> (Ten (10) pages total);" and

(9) "United States District Court, Southern District of California Case; <u>Paul Hupp v. San Diego County District Attorney et al</u>, Case No.: 12-cv-00492 IEG (RBB), Third Amended Complaint dated <u>July 23, 2012</u> (Thirty-seven (37) pages total)."

(ECF No. 8 at 15-16.)

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citations omitted); *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (noting that a court may take judicial notice of federal and state court records); *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010) (taking judicial notice of the docket sheet of a California court). Courts may take judicial notice of a record of a state agency that is not subject to reasonable dispute. *Brown v. Valoff*, 422 F.3d 926, 932-33, n.7, n.9 (9th Cir. 2005); *see also Birdwell v. Martel*, 2012 WL 1131540, at *1, n.1 (E.D.

Cal. Mar. 30, 2012) (taking judicial notice of Board of Parole Hearings Decision submitted by petitioner).

Applying the above standards, the Court grants Requests 2, 3, 5, 6, 7, 8, and 9. The Court takes judicial notice of the existence of these documents but not the disputed assertions made therein. Requests 1 and 4 are denied as neither e-mails nor laboratory reports contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201.

## B. Subject Matter Jurisdiction over Collateral Challenges to Expired Convictions

The common thread to each of Petitioner's habeas grounds is his argument that his 2013 convictions were unlawfully obtained because the jury was improperly presented with evidence of his prior convictions. As framed by Petitioner, his challenges to his 2013 convictions rest on his ability to launch successful collateral attacks either on his 1982 misdemeanor conviction for contributing to the delinquency of a minor, or on his 2011 civil contempt of court conviction for sending Mr. Freedman letters in violation of a November 2010 restraining order. (ECF Nos. 1, 8.) Specifically, Petitioner's claims are premised upon this argument: (1) an earlier conviction of Petitioner's was unlawfully obtained; (2) evidence of that earlier conviction was used against him at in his 2013 trial; and (3) therefore his 2013 conviction must be reversed.[10] As explained below, Petitioner is not "in custody" under the earlier convictions he challenges and, thus, his claims are not cognizable on federal habeas review.[11]

---

[10] Ground 1 – prosecutor "used an illegally obtained 1982 conviction . . . to vouch for and bolster current charges"; ground 2 – "Counsel allowed [invalid and stale] 1982 misdemeanor conviction to be used at trial, should have been 100% excluded"; ground 3 – "Use of invalid 1982 misdemeanor conviction . . . The 1982 conviction was invalid for violating the 5th, 6th and 14th Amendments"; ground 4 – Prosecutorial misconduct due to "Failure to turn over exculpatory evidence in prior contempt of court case that was used to vouch for and bolster current charges"; ground 5 – "Use of prior contempt of court case, where exculpatory evidence was withheld, used to vouch for and bolster current charges"; and ground 6 – "Prosecutor used an invalid 1982 conviction . . . to vouch for and bolster the current charges. The conviction was invalid as it violated the 4th, 5th, 6th and 14th Amendments."

[11] The sole exception may arguably be found in one aspect of ground six in which, in addition to objecting to the prosecutor's use of his 1982 conviction due to its alleged illegality, Petitioner also complains that

13

At the time of the filing of this Petition, Petitioner was not in custody for either of these prior convictions.[12]  That is, each is an "expired conviction" that is no longer open to attack in its own right.  As a result, the threshold issue is whether Petitioner can use this habeas proceeding to collaterally attack these prior expired convictions.  If he cannot, his Petition must be denied, for he asserts no other bases for attacking his 2013 convictions.

Subject matter jurisdiction over federal habeas corpus petitions exists only when, at the time the petition is filed, the petitioner is "in custody ***under the conviction or sentence challenged in the petition***.  *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); 28 U.S.C. § 2254(a); *Bailey v. Hill*, 599 F.3d 976, 978-79 (9th Cir. 2010) ("federal courts lack jurisdiction over habeas corpus petitions unless the petitioner is 'under the conviction or sentence under attack at the time his petition is filed'"); *Sandoval v. Unknown*, No. 17cv1275-GPC-BGS, 2017 WL 3021039, at *1 (S.D. Cal. July 17, 2017) (same).  At the time of filing the Petition, Petitioner was in custody under his 2013 convictions only.  Thus, unless an applicable exception applies, Petitioner cannot meet the "in custody" requirement as to his expired 1982 and 2011 convictions and their legality cannot be challenged through this habeas proceeding.

The Supreme Court has established two exceptions to this strict "in custody under the conviction or sentence challenged" habeas requirement.  A petitioner challenging in habeas the validity of an expired conviction can satisfy the "in custody" requirement, even

---

"[P]rosecutor spent over 8 hours [i]n closing argument referring to this [1982] case."  (ECF No. 1 at 17.) This statement is not developed by Petitioner as a separate ground or argument, and this Court does not believe Petitioner, who is a law school graduate, intended to raise a claim about the propriety of the *manner* in which the prosecutor used the 1982 conviction at trial.  "Although a pro se habeas petition is 'given the benefit of liberal construction,' *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), even 'a liberal interpretation . . . may not supply . . . [a] claim that [was] not initially pled,' *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)."  *Lewis v. Nevada*, 692 F. App'x 353, 355 (9th Cir. 2017). Nevertheless, this Court addresses this objection separately in the merits section of this Report and Recommendation in the event the District Judge declines to deny the entire Petition for lack of subject matter jurisdiction.

[12] Petitioner did not receive any period of incarceration for his 1982 conviction.  (*See, e.g.*, ECF No. 6-8 at 46, 55, 66.)  Petitioner served 25 days in jail for his civil contempt conviction, beginning in early January 2012.  (*See, e.g.*, ECF Nos. 6-6 at 23; 6-8 at 63; 6-13 at 187-89; 6-21 at 30.)

if he is no longer in custody for the prior conviction, *if* the prior conviction: (1) is a necessary predicate to his current conviction or sentence; or (2) was used to enhance his current sentence for a later offense. *See Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 401-02 (2001); *Maleng*, 490 U.S. at 493-94. Under these limited circumstances, the "in custody" requirement is deemed to be satisfied by the later conviction or sentence. *See Lackawanna*, 532 U.S. at 401-02 (challenge to 1958 expired conviction construed as challenge to current 1978 sentences *enhanced* by 1958 conviction). However, and most pertinent here, courts have ***not*** held that a petitioner can challenge the validity of an expired conviction merely because it was introduced—rightly or wrongly—as evidence at the trial that resulted in a petitioner's current convictions and custody.

Here, Petitioner does not contend, and the record does not support, that either of his prior convictions was a necessary predicate to his current confinement or sentence. (*See* ECF Nos. 6-21 at 18-21 (verdict forms); 6-25 at 187-191 (Counts 1-4).) *Cf. Zichko v. Idaho*, 247 F.3d 1015, 1019-20 (9th Cir. 2001) (finding habeas petitioner is in custody for purposes of challenging earlier, expired rape conviction, when he is incarcerated for failing to comply with a state sex offender registration law, because the earlier rape conviction is a necessary predicate to the failure to register charge). It cannot be plausibly argued that one cannot be convicted of stalking in violation of a court order, making a criminal threat, and/or disobeying a restraining order unless one was previously convicted of contributing to a delinquency of a minor or civil contempt. Although these prior convictions constituted some of the evidence used against Petitioner in his trial in 2013,[13] they were not predicate offenses.

Similarly, Petitioner does not argue, nor could he, that either prior conviction was used to enhance his current sentence. On the contrary, all of Petitioner's arguments go to

---

[13] The Court instructed the jury that while they heard testimony related to a prior finding of civil contempt against Petitioner "which may have involved some of the conduct alleged in this criminal case[,] the ruling in that contempt hearing was based upon different law and different evidence than that which applies to and has been presented in this criminal case." (ECF No. 6-14 at 78.)

the propriety of the use of evidence of his prior convictions to secure his current 2013 convictions, and Petitioner does not separately challenge the 2013 sentence itself in any way.

As a result, the Petition should be denied for lack of subject matter jurisdiction as it is entirely premised on Petitioner's ability to launch successful collateral attacks on prior expired convictions, and Petitioner cannot satisfy the "in custody" requirement of 28 U.S.C. § 2254(a) with respect to his 1982 and 2011 convictions.

## C. Collateral Challenges to Expired Convictions are not Cognizable on Federal Habeas Review

To the extent the District Judge declines to deny the entire Petition for lack of subject matter jurisdiction alone, the "in custody" requirement is only the first insurmountable hurdle to the success of this Petition. Even if Petitioner could satisfy §2254's "in custody" requirement by relying on the fact that evidence of his prior expired convictions was used to secure his current conviction, this Court would still be precluded from granting Petitioner relief based upon his challenge to the legality of his prior expired convictions. For the next part of this analysis, the Court again looks to the United States Supreme Court case of *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001).

In *Lackawanna*, after having determined that petitioner met the threshold "in custody" requirement under §2254, the Supreme Court turned to the issue of **the extent** to which a federal habeas petitioner can challenge the underlying predicate conviction under §2254. *Id.* at 402. Emphasizing the need for finality of judgments, the Supreme Court held that, even where the "in custody" requirement has been satisfied, a petitioner generally may not use a habeas challenge to a current conviction to attack a prior conviction that is no longer open to direct or collateral attack in its own right. Specifically the Supreme Court determined, "once a state conviction is no longer open to direct or collateral attack in its own right . . . the conviction may be regarded as conclusively valid . . . [and even] [i]f that conviction is later used to enhance a criminal sentence, the defendant generally

16-cv-00767-GPC-JLB

may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." *Id*. at 403-04.

The Supreme Court in *Lackawanna* recognized only one exception and one additional possible exception to this general rule, neither of which help Petitioner here. The recognized exception applies when there is a challenge to a prior expired conviction which was uncounseled in violation of the Sixth Amendment as recognized in *Gideon v. Wainwright*, 372 U.S. 335 (1963). *Lackawanna*, 532 U.S. at 404.[14] Although Petitioner here seeks to challenge his 1982 conviction on the basis that it was uncounseled, an uncounseled misdemeanor conviction for which the defendant is not imprisoned, such as Petitioner's 1982 conviction (*see, e.g.*, ECF No. 6-8 at 46, 55, 66), does not violate the Sixth Amendment. *Nichols v. United States*, 511 U.S. 738, 743 n.9 (1994) ("In felony cases, in contrast to misdemeanor charges, the Constitution requires that an indigent defendant be offered appointed counsel unless that right is intelligently and competently waived.") (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)); *Scott v. Illinois*, 440 U.S. 367, 373-74 (1979) ("the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense"). Thus, the *Gideon* exception to collateral attacks on expired convictions does not apply.

The second, *possible* exception contemplated by a plurality of the Court in *Lackawanna,* could apply in the situation where a petitioner cannot be faulted for failing to obtain a timely review of a constitutional claim, either because a state court, without justification, refused to rule on a constitutional claim properly presented to it, or because the petitioner uncovered "compelling evidence" of his innocence after the time for review

---

[14] *See also Johnson v. United States*, 544 U.S. 295, 303 (2005) ("We recognized only one exception to this rule that collateral attacks were off-limits, and that was for challenges to state convictions allegedly obtained in violation of the right to appointed counsel, an exception we thought necessary to avoid undermining *Gideon*").

had expired that could not have been timely discovered. *Lackawanna*, 532 U.S. at 405-06; *see also Dubrin v. People of California*, 720 F.3d 1095, 1098 (9th Cir. 2013) ("when a defendant cannot be faulted for failing to obtain timely review of a constitutional challenge to an expired prior conviction, and that conviction is used to enhance his sentence for a later offense, he may challenge the enhanced sentence under § 2254 on the ground that the prior conviction was unconstitutionally obtained").

Petitioner argues that his 2011 conviction was not appealable. (ECF No. 8 at 4, n.5, 9, n.12.) But Petitioner also acknowledges that his civil contempt conviction was reviewed in state habeas corpus proceedings. (*See* ECF No. 8 at 36; *see also Hupp v. San Diego Super. Ct., et al.*, 12-cv-00274-WQH-JMA, ECF No. 1 at 13 (Jan 4, 2012 denial of habeas petition for review of 2011 conviction by Supreme Court of California).) Petitioner also filed federal habeas corpus proceedings as to that conviction in this district court, which were dismissed first for failure to exhaust and then for failure to meet the "in custody" requirement. (*See Hupp v. San Diego Super. Ct., et al.*, 12-cv-00274-WQH-JMA, ECF No. 4.) Thus, the second, *possible* exception to the general rule that collateral attacks on prior expired convictions are off-limits does not apply.

In sum, Petitioner's claims must be denied because this Court lacks jurisdiction to grant the relief Petitioner seeks. His claims all turn on challenges to prior expired convictions for which he cannot meet the "in custody" requirement. Petitioner cannot rely on any exception to the "in custody" rule because the convictions he asserts were unlawfully obtained were neither predicates to his current conviction nor were they used to enhance his current sentence. Even if he could satisfy the "in custody" requirement, which he cannot, his collateral challenges to his prior convictions are not cognizable on federal habeas review. The prior convictions were not uncounseled in violation of *Gideon* and Petitioner was not deprived of any opportunity for review as contemplated by the plurality in *Lackawanna*. On this basis, the Court RECOMMENDS that this Petition be DENIED.

///

**D.     Merits of Petitioner's Claims**

If the District Judge declines to deny the entire Petition for lack of subject matter jurisdiction and construes the Petition as containing claims that are not merely off-limit collateral attacks on prior expired convictions, the Court recommends dismissal on the merits, based upon the following analysis.

**1.     Ineffective Assistance of Trial Counsel (Ground 2)**

In ground two, Petitioner alleges ineffective assistance of counsel due to counsel's failure to have the 1982 misdemeanor conviction excluded from trial as it was invalid and stale.  (ECF No. 1 at 7.)  Respondent does not address this ground.[15]

Habeas petitioners who wish to challenge either their state court convictions or the length of their confinement in state prison, must first exhaust state judicial remedies.  28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987).  Ordinarily, to satisfy the exhaustion requirement, a petitioner must "'fairly present[ ]' his federal claim to the highest state court with jurisdiction to consider it, or . . . demonstrate [ ] that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).  Moreover, to properly exhaust state court remedies, a petitioner must allege in state court how one or more of his or her federal rights have been violated.  For example, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  Petitioner did not satisfy the exhaustion requirement with respect to his second ground for habeas relief.

Ground two was not raised before the California courts.  (*See* ECF Nos. 6-26; 6-30.)  Nonetheless, as this Court finds there are no longer state judicial remedies available, the

---

[15] Instead, Respondent argues against a claim not made by Petitioner here, arguing "Hupp claimed trial counsel should have moved to exclude the evidence that he was convicted of contempt for sending letters to Freedman in violation of the November 2010 restraining order."  (ECF No. 5-1 at 17-19.)

Court considers ground two to be technically exhausted.[16]  Thus, Petitioner's ground two may be procedurally defaulted, and thus barred from federal habeas review.

However, this issue was not briefed by the parties.  Moreover, this Court need not determine whether Petitioner is procedurally barred from raising ground two because on its face and without regard to any facts that could be developed below, ground two is "clearly not meritorious."  *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").  Based on a *de novo* analysis, habeas relief should be denied as to ground two.

For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must show that counsel's performance was deficient.  *Strickland v. Washington*, 466 U.S. 668, 687 (1994).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  Petitioner must also show that counsel's deficient performance prejudiced the defense, in that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable."  *Id*.  To show prejudice, Petitioner need only demonstrate a reasonable probability—"a probability sufficient to undermine confidence in the outcome"—that the result of the proceeding would have been different absent the error. *Id*. at 694.  Petitioner must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel.  *Id*. at 687.

---

[16] When Petitioner initiated this action by mailing his pro se Petition to the Court on March 30, 2016 (*see* ECF No. 1 at 15, 49), nearly one year had elapsed after the state supreme court denied habeas relief on April 1, 2015 (*see* ECF No. 6-31 at 1.)  Now that over three years have passed since that denial, it is clear that the exhaustion requirement is technically satisfied as to the claim that should have been but was not presented to the state supreme court because there is now an absence of available state judicial remedies. *See Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that [the] claims were nonetheless exhausted because 'a return to state court for exhaustion would be futile.'").

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Id.* at 110 (quoting *Strickland*, 466 U.S. at 686).

This Court concludes that trial counsel's failure to move to exclude the 1982 conviction did not constitute ineffective assistance of counsel under the standards set forth in *Strickland*. Even assuming trial counsel erred by not moving to exclude all evidence concerning the 1982 conviction,[17] this Court finds there was no prejudice because there was no chance of such a motion succeeding, and Petitioner fails to demonstrate otherwise. The identity of Petitioner as the author and sender of insulting and threatening letters to Mr. Freedman was the major issue at trial. And an understanding of the difference of opinion between Petitioner and Mr. Freedman regarding the 1982 conviction was highly relevant to whether Petitioner had a motive to author and send the letters to Mr. Freedman. (*See*, *e.g.*, ECF No. 6-4 at 11; ECF No. 6-25 at 4 (prosecution's trial br.).)

By way of background, Petitioner did not disclose the 1982 conviction in a teaching application in 1987, which led to his being denied a certificate of clearance, and later a 30-day emergency credential to be a substitute teacher. Mr. Freedman, sitting as a pro tem administrative law judge, issued a written decision recommending denial of the 30-day emergency credential, reasoning that Petitioner's 1982 conviction involved acts of moral turpitude and directly related to his fitness to teach, and defendant failed to disclose this conviction in his 1987 application for a certificate of clearance. (*See* ECF No. 6-29 at 3,

---

[17] The Court notes that the record reflects that, throughout motions in limine and trial, Petitioner's trial counsel objected to the scope, undue prejudice, and relevance of questions and evidence concerning the 1982 conviction. (*See*, *e.g.*, ECF No. 6-4 at 7-29; ECF No. 6-5 at 48-49; ECF No. 6-9 at 59; ECF No. 6-12 at 164-68; ECF No. 6-13 at 54.) Petitioner's trial counsel also moved for a mistrial based on Mr. Freedman's testimony with respect to the 1982 conviction. (ECF No. 6-9 at 185-92.)

n.1.)  Petitioner took issue with Mr. Freedman's characterization of the 1982 conviction and filed suit against Mr. Freedman about it.  (*See* ECF No. 6-9 at 127-28; ECF No. 6-22 at 121-24, 181-87.)

To demonstrate motive, the prosecution sought to show that Petitioner believed Mr. Freedman ruined his life and was angry enough with Mr. Freedman to write threatening letters to him during the relevant time period, September 30, 2009 through December 27, 2011.[18]  The prosecution sought to show that Petitioner believed both that the 1982 conviction was void and that Mr. Freedman knew it was void when he issued his decision. The prosecution sought to show that Petitioner maintained this belief throughout 2011 as evidenced by, for example, Petitioner's civil rights suit against Mr. Freedman that alleged Mr. Freedman "cost Plaintiff literally millions of dollars in lost income from denial of Plaintiff's teacher permit on the basis of a trumped up, invalid and void, misdemeanor citation that was close to two (2) decades old and involved nothing more than a fine of less than $200."  (ECF No. 6-22 at 34; ECF No. 6-9 at 111-17; *see also* ECF No. 6-12 at 140-44; ECF No. 6-12 at 5-6.)

The trial court held that it was appropriate for the jury to hear evidence about Petitioner's disagreement with Mr. Freedman, which would necessarily include evidence about the 1982 conviction.  For example, the trial court ruled admissible two letters sent to Mr. Freedman known to be from Petitioner over Petitioner's trial counsel's objections, including an objection that the letters "invite[] speculation about all the underlying legal activity."  (ECF No. 6-4 at 8, 16-29.)  The first letter did not mention the 1982 conviction. (*See* ECF No. 6-22 at 11-13 (Tr. Ex. 1).)  However, the second letter did.  In that letter, Petitioner referenced the 1982 conviction and his disagreement with Mr. Freedman about the conviction in the text of his letter and the attachment thereto.  (*See* ECF No. 6-22 at 15-

---

[18] Eight letters sent between September 30, 2009 and December 27, 2011 (People's Exs. 3-10) formed the basis for the crimes charged against Petitioner.  (*See* ECF No. 6-4 at 11-12; ECF No. 6-29 at 2-11.)

27 (Tr. Ex. 2).)  In admitting this letter (among others) over counsel's objections, the trial court reasoned:

> . . . I think you have to look at the overall context to see how the threat comes in and to see the whole motive behind it, which again, without motive there would be a problem with, you know, the actual perceived threat and the intent to cause that perceived threat, which are elements of these crimes. . . .  I think it does open up some doors for Mr. Hupp to explain some things, if he wishes to, or at least question some of these things. . . . . it does open some doors, but I think that's just part and parcel of the case.

(*Id.*)  With this backdrop, and given that Petitioner's disagreement with Mr. Freedman over the 1982 conviction was at the heart of the prosecution's theory for showing motive and intent, the Court finds there was no chance a motion to exclude evidence of the 1982 conviction could have succeeded.  Thus, Petitioner fails to demonstrate a reasonable probability that a motion to exclude all evidence of the 1982 conviction would have been granted.

Petitioner also cannot satisfy the prejudice prong of *Strickland* because the jury was instructed that the evidence of other legal proceedings was relevant solely as to the issue of motive or other limited purposes specified by the trial court.  (ECF No. 6-14 at 68-71, 76-78.)  Jurors are presumed to follow their instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and Petitioner supplies no evidence to overcome that presumption here.  Accordingly, Petitioner's claim of ineffective assistance in ground two is clearly meritless and should be denied.

## 2. Prosecutorial Misconduct (Grounds 1, 3, 4, 5, and 6)

Petitioner's first and third through sixth grounds for habeas relief in the Petition allege prosecutorial misconduct and should be denied.[19]  (ECF No. 1.)

---

[19] Ground 1 – prosecutor "used an illegally obtained 1982 conviction . . . to vouch for and bolster current charges"; ground 3 – "Use of invalid 1982 misdemeanor conviction . . .  The 1982 conviction was invalid for violating the 5th, 6th and 14th Amendments"; ground 4 – Prosecutorial misconduct due to "Failure to turn over exculpatory evidence in prior contempt of court case that was used to vouch for and bolster current charges"; ground 5 – "Use of prior contempt of court case, where exculpatory evidence was

### a. Standard of Law

"On habeas review of a prosecutorial misconduct claim, [a court] may grant relief only if the misconduct rises to the level of a due process violation—not merely because [the court] might disapprove of the prosecutor's behavior." *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010). A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 193 (1986). Petitioner has the burden to prove the prosecutor's comments "'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Furthermore, the alleged misconduct must be reviewed in the context of the entire trial. *Donnelly*, 416 U.S. at 643.

### b. Alleged Prosecutorial Misconduct Concerning Use of the 1982 Conviction (Grounds 1, 3, and 6)

Petitioner's first, third, and sixth grounds for habeas relief in the Petition allege prosecutorial misconduct concerning the prosecutor's use of the 1982 conviction. (ECF No. 1.) In the Petition, Petitioner provides the following statements in support of his claims for prosecutorial misconduct: "Deputy Dirsttict [*sic*] Attorney (DDA) used an illegally obtained 1982 conviciton [*sic*] for contributing to the delinquency of a misdemeanor conviction from 1982 to vouch for and bolster current charges" (ECF No. 1 at 5 (ground one)); "The 1982 conviction was invalid for violating the 5th, 6th and 14th Amendments" (*id*. at 8 (ground three)); and "Use of invalid 1982 misdemeanor conviction of contributing to the delinquency of a minor to bolster and vouch for current charges" (*id*. at 17 (ground six)). Petitioner's supporting facts for ground six read: "Prosecutor used an invalid 1982 conviction, contributing to the delinquency of a minor, to vouch for and bolster the current

withheld, used to vouch for and bolster current charges"; and ground 6 – "Prosecutor used an invalid 1982 conviction . . . to vouch for and bolster the current charges. The conviction was invalid as it violated the 4th, 5th, 6th and 14th Amendments."

charges. The conviction was invalid as it violated the 4th, 5th, 6th and 14th Amednments. [P]rosecutor spent over 8 hours [i]n closing argument referring to this case." (*Id.*) Thus, all aspects of grounds one, three and six—arguably with the exception of the objection to the prosecutor spending excessive time focused on the conviction—turn on the legality of Petitioner's 1982 conviction.

Respondent answers that these claims are vague and conclusory and must be denied because Petitioner appears to be challenging the admissibility of his 1982 misdemeanor conviction, which is not a basis to seek habeas relief under 28 U.S.C. § 2254; there is no federal question presented and there is no Supreme Court precedent on the matter. (ECF No. 5-1 at 20-21.) In the Traverse, Petitioner reiterates that the focus of his prosecutorial misconduct claim is that it constituted prosecutorial misconduct to use an "illegally obtained" conviction at trial. (ECF No. 8 at 2-4.) Petitioner goes on to explain in the Traverse a number of reasons why he contends his 1982 conviction was obtained in violation of his constitutional rights, including that he did not have and was not offered counsel in the 1982 proceedings against him. (*Id.*)

As addressed above, habeas petitioners who wish to challenge either their state court convictions or the length of their confinement in state prison must first exhaust state judicial remedies. 28 U.S.C. § 2254(b), (c); *Granberry*, 481 U.S. at 133-34. Before the state appellate courts, and in contrast with his first, third, and sixth grounds for federal habeas relief before this Court, Petitioner did ***not*** argue that it constituted prosecutorial misconduct to use his 1982 conviction at trial on the basis that it was "illegally obtained." Rather, Petitioner presented a different prosecutorial misconduct claim to the state courts. In state court, Petitioner raised the issue of whether the prosecutor committed misconduct by probing into irrelevant matters, including details of his 1982 conviction, to appeal to the passion and prejudice of the jury. (*See* ECF No. 6-30 at 11-12, 18-21, 31-46; *see also* ECF No. 6-26 at 39-45.) Because Petitioner's complaint about the prosecutor spending eight hours focused on the 1982 conviction may arguably fall under the claim made to the state

courts, this Court treats only that aspect of ground six as exhausted, and so addresses this aspect of ground six separately.

Before the California Supreme Court, Petitioner sought review on the issue of whether the prosecutor committed prejudicial misconduct by (a) repeatedly insinuating that Petitioner was attempting to commit a sex crime in 1982, (b) repeatedly insinuating that Petitioner was withholding evidence, and (c) by improperly introducing irrelevant evidence and impeaching Petitioner on collateral matters, such as Petitioner's ability to work, the validity of his 1982 conviction, his history of name-calling and accusations against other people in the legal community, and his misunderstandings of legal concepts in other legal proceedings. (*See* ECF No. 6-30)

The Court of Appeal rejected Petitioner's prosecutorial conduct claim as follows:[20]

> We have reviewed the record, including defendant's testimony on direct and cross-examination and the prosecutor's closing arguments, and find no prosecutorial misconduct or abuse of discretion by the trial court. When [defendant was] questioned on direct examination, defense counsel elicited a substantial amount of testimony from defendant about a wide variety of matters to support the theory that defendant had no reason to send anonymous letters . . . .

> For example, defendant testified about his 1982 conviction for contributing to the delinquency of a minor that gave rise to the Commission's denial of his teaching permit application . . . . Defendant stated that he met some girls at an "over 21" bar and then went to the car with the girls to drink beer; when he entered his plea he did not have a lawyer and was never offered one; the judge told him if he went to trial and lost he would receive three years in prison; the judge offered to give him a fine and that would " 'be the end of it' "; and at the time of his plea he was under the influence of pain killers due to a motorcycle injury. Further, he said he did not disclose this conviction on his teaching credential application because the application asked if he had ever been convicted of a crime in an Education Code section, and there was no way

---

[20] Because there is no reasoned decision from the California Supreme Court, this Court "looks through" to this underlying appellate court decision and presumes that it provides the basis for the higher court's denial of Petitioner's claims. *See Ylst*, 501 U.S. at 804.

16-cv-00767-GPC-JLB

for him to discover what crimes were covered by the Education Code section without hiring a lawyer which he did not have the money to do.

Defendant . . . submitted documentation showing that his 1982 conviction had been expunged. . . .

. . . .

Following defendant's testimony on direct examination, the prosecutor engaged in a lengthy cross-examination of defendant, which . . . included questions about such matters as whether defendant knew the age of the girls with whom he was drinking beer in 1982 . . . . During the course of the questioning, defense counsel frequently objected that the questions were irrelevant or argumentative, and in several instances complained the prosecutor was engaging in improper impeachment on collateral matters and had "gone far beyond what's appropriate." The court overruled many of the objections, and during discussions outside the presence of the jury, the court stated that the cross-examination questions were related to defendant's direct examination testimony. At various points the court did, however, state the prosecutor should "move on" and finish his cross-examination, and at one point curtailed the prosecutor's questioning under Evidence Code section 352.

. . . .

Contrary to defendant's contention, the record does not show that the prosecutor improperly impugned defendant's character or questioned him about collateral, irrelevant matters. Rather, the record supports that the cross-examination and closing arguments were within the scope of permissible, vigorous cross-examination and argument and related to matters elicited on direct examination. For example, defendant complains the prosecutor was permitted to insinuate that his 1982 offense involved an attempt to get the girls drunk so he could commit a sexual molestation crime. The trial court could reasonably determine that the prosecutor's questioning and arguments on this point were permissible responses to defendant's testimony that he met the girls at an "over 21" bar, thus suggesting the girls appeared not to be minors and that the encounter was benign. . . .

Although the prosecutor's examination of defendant was lengthy, it stayed within the bounds of permissible cross-examination on matters raised by defendant in direct examination. Likewise, the evidence introduced by the prosecutor, the prosecutor's closing argument, and the instructions were a reasonable response to the defense case. Defendant's claim that he was

///
///

deprived a fair trial due to prosecutorial misconduct or court error is unavailing.

(ECF No. 6-29 at 15-22 (internal footnotes omitted).)

Under *Darden*, in determining whether a prosecutor's conduct violated a criminal defendant's due process rights, the first question is whether the prosecutor committed misconduct; if so, the next question is whether the misconduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). Here, the prosecutor's questioning and argument were within the scope of permissible, vigorous cross-examination and argument and related to matters elicited on direct examination.

Petitioner's underlying trial concerned whether he sent anonymous, threatening letters to Mr. Freedman in 2009 through 2011 as a consequence of Petitioner's disagreement with Mr. Freedman's 1998 administrative decision. The trial court ruled admissible (to show motive and intent) similar letters from 2000 and 2006 that Petitioner acknowledged sending to Mr. Freedman and further held that Petitioner could, "if he wishes to," explain the content of the letters from 2000 and 2006. (ECF No. 6-4 at 27-29.) In this context, Petitioner chose to testify about his written criticisms of Mr. Freedman's decision, which included criticisms of Mr. Freedman's reliance on Petitioner's 1982 conviction and failure to report that conviction.

Petitioner testified at length on direct examination about the facts surrounding his arrest and conviction in 1982. When referring to the arrest in response to his counsel's questions, he made statements suggesting that the girls may not have been minors, that the encounter was not criminal in nature, that he was never convicted, and that he was not obligated to disclose his 1982 arrest and/or conviction. For example, in referencing the 1982 incident, Petitioner testified:

- "[W]e had met up with some girls at a club that was over 21. It wasn't really a club. It was more like a bar. We ended up leaving. We – they actually sell beer-to-go there. We took the beer with us, and we went out and drank it in the car" (ECF No. 6-12 at 19);

- that five or six years after the 1982 arrest, he did not disclose the arrest on a teaching credential application because "the teaching credential asked if you had ever been convicted of a crime in an Education Code Section. The Education Code Section did not list the crimes nor was there any other way to determine what those crimes were, short of hiring a lawyer to figure it out for you, and I did not list it" (*id*. at 23-24);

- that in 1997, Petitioner had a substitute teaching permit, but that the Commission told his school district to "not let me work" because "they again were going to make an issue of . . . . the so-called, you know, transgression from 1982" (*id*. at 27-29);

- that the record before Mr. Freedman in 1998 included an expungement setting aside the 1982 conviction, and Petitioner was particularly surprised by Mr. Freedman's written decision recommending that Petitioner's teaching permit be denied because Petitioner believed the decision showed Mr. Freedman relied on the police report reflecting his 1982 arrest – a report that Petitioner had objected to as being a "third party, unsworn, unverified . . . police report" (*id*. at 33-34); and

- that in the 2005-2006 timeframe, a reason provided to Petitioner for not passing the background clearance for the attorney bar exam was "my conviction from 1982, even though I had stated to them it wasn't valid. . . . You know, I did not waive my constitutional rights. It was sort of a railroading" (*id*. at 45-47).

Further, on direct, Petitioner testified that in 2006 he re-read and viewed Mr. Freedman's 1998 administrative decision as being relevant to his bankruptcy proceedings pending at that time. (ECF No. 6-12 at 47-50.) Petitioner further testified on direct that in re-reading Mr. Freedman's written decision, he was "very angry" about it, and as a result, wrote Mr. Freedman a letter in 2006 to which Petitioner attached a marked-up copy of that decision containing Petitioner's handwritten reactions to various portions of the decision.

(ECF No. 6-12 at 47-49.)  That letter and its attachment had already been entered into evidence, and when asked during his direct examination whether he meant all the things that he said in the letter, which included statements about the 1982 arrest and conviction, Petitioner testified, "Every one of them."  (ECF No. 6-12 at 49; *see also* ECF No. 6-22 at 14-27 (People's Exhibit 2).)  Based on the breadth and depth of Petitioner's testimony on the facts surrounding the 1982 arrest and conviction, this Court concludes that the California Court of Appeal reasonably found that the prosecutor's questioning and arguments on the facts surrounding the 1982 arrest and conviction were permissible and not outside the bounds of due process.

The prosecutor's questioning and argument about the facts surrounding Petitioner's 1982 arrest and conviction were within the scope of Petitioner's testimony on direct examination.  As with California law, under federal law, permissible cross examination includes anything "reasonably suggested" by the direct examination.  *United States v. Martinez*, 967 F.2d 1343, 1347 (9th Cir. 1992) ("impeachment evidence may not be introduced on cross-examination unless the defendant opens the door by reasonably suggesting the line of questioning"); *see also Michelson v. United States*, 335 U.S. 469, 485 (1948) ("we think defendants in general and this defendant in particular have no valid complaint at the latitude which existing law allows to the prosecution to meet by cross-examination an issue voluntarily tendered by the defense").  This Court concludes that the Court of Appeal reasonably found that there was no prosecutorial misconduct.

Thus, the Court of Appeal's rejection of Petitioner's claim as to the manner in which the prosecutor used the 1982 conviction at trial was not contrary to or an objectively unreasonable application of clearly established federal law, or an unreasonable determination of the facts.

With respect to the unexhausted portions of grounds one, three and six challenging the prosecutor's use of the 1982 conviction because of its alleged illegality, failure to exhaust does not necessarily preclude this Court's review.  Under appropriate circumstances, federal courts have discretion to deny a habeas application on the merits

notwithstanding a petitioner's failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits.").

After reviewing the Petition's unexhausted first, third, and sixth grounds for federal habeas relief *de novo*, the Court concludes that Petitioner's claims clearly fail on the merits. As addressed above, Petitioner challenges the legality of his 1982 conviction because he was not represented by counsel. However, an uncounseled misdemeanor conviction for which the defendant is not imprisoned, such as Petitioner's 1982 conviction (*see, e.g.*, ECF No. 6-8 at 46, 55, 66), does not violate the Sixth Amendment. *Nichols*, 511 U.S. at 743 n.9 ("In felony cases, in contrast to misdemeanor charges, the Constitution requires that an indigent defendant be offered appointed counsel unless that right is intelligently and competently waived.") (citing *Gideon*, 372 U.S. 335); *Scott*, 440 U.S. at 373-74 ("the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense"). Thus, Petitioner cannot establish that his 1982 conviction was unconstitutionally obtained and grounds one, three and six are both non-cognizable and without merit.

Additionally, even if Petitioner could establish that his 1982 conviction were unconstitutionally obtained, he could not show that it was a clear violation of federal law for the prosecutor to use the conviction as evidence in his 2013 trial. As addressed above, the ***fact*** of Petitioner's conviction, regardless of its procedural legitimacy, was at the heart of the dispute between Petitioner and Mr. Freedman, and was properly used by the prosecution.

///

///

### c. Alleged Prosecutorial Misconduct Concerning Use of Contempt Conviction (Grounds 4 and 5)

Petitioner's fourth and fifth grounds for habeas relief in the Petition concern the use of his 2011 contempt conviction during the 2013 criminal trial that underlies the Petition. (ECF No. 1.)

Petitioner pleads the following as his ground four for federal habeas relief: "Failure to turn over exculpatory evidence in prior contempt of court case that was used to vouch for and bolster current charges." (ECF No. 1 at 10.) In support of ground four, Petitioner states: "Prosecution failed to turn over exulpltory [*sic*] evidence in prior contempt of court case that was then used to vouch for and bolster current charges. (*Id.*) As to his ground five for federal habeas relief, Petitioner pleads the following: "Use of prior contempt of court case, where exculpatory evidence was withheld, used to vouch for and bolster current charges." (ECF No. 1 at 16.) In support of ground five, Petitioner states: "Prosecutor used a prior contempt of court case, where prosecution withheld exculpatory evidence, to vouch for and bolster the current charges." (*Id.*)

Related to these grounds, Petitioner presents argument in his Traverse about a civil contempt conviction he received in 2011 for contacting Mr. Freedman in violation of a court order. (ECF No. 8 at 4-8.) With respect to that conviction, Petitioner argues that the prosecutor obstructed justice in 2011 by refusing to turn over "exculpatory" evidence. (ECF No. 8 at 6-8 (citing *Brady v. Maryland*, 373 U.S. 83 (1963).) Specifically, the "exculpatory" evidence (that Petitioner only learned about after his 2011 conviction) was that forensic testing had been conducted on the letters used to establish the 2011 conviction, and that the test results showed two fingerprints on the envelopes that did not belong to Petitioner and the absence of usable DNA matter. (*Id.*; *see also* ECF No. 6-29 at 11-12, n.8.) Petitioner goes on to argue that, in light of this undisclosed "exculpatory" evidence, he was denied a fair trial because it was improper to use his 2011 civil contempt conviction against him during the 2013 criminal trial. (*Id.* at 9.)

The crux of grounds four and five was fairly presented to the California courts–whether Petitioner's 2011 contempt conviction was obtained in violation Petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* ECF No. 6-26; ECF No. 6-30.) Before the California courts, Petitioner raised the issue of whether the 2011 contempt conviction was excludable because it was obtained in violation of Petitioner's due process rights, given the prosecutor's failure to disclose the "exculpatory" forensic testing results as required by *Brady*. (ECF No. 6-26 at 27, 31-34; ECF No. 6-29 at 11; ECF No. 6-30 at 14-17.) The Court of Appeal held that the trial court was not required to find a *Brady* violation because the forensic testing results were not material. (ECF No. 6-29 at 12-14.) The Court of Appeal explained that the forensic testing results were not material under *Brady* "[b]ecause the forensic testing results provided minimal information concerning the question of authorship, there is no reasonable probability that disclosure of the results would have caused the court not to find defendant in contempt at the contempt hearing; accordingly the *Brady* claim fails to satisfy the materiality requirement." (*Id*. at 14; *see also* ECF No. 6-31 (Supreme Court of California's denial of the petition).)

The California Court of Appeal's decision regarding the excludability of the 2011 conviction is not contrary to, nor is it an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963). A due process violation occurs under *Brady* when the prosecution fails to disclose evidence that is favorable to the accused **and** material on the issue of guilt or innocence.[21] Here, the Court of Appeal reasonably concluded that, even assuming the forensic testing results were available to the prosecution in 2011, the testing results were not material on the issue of guilt or innocence. The envelopes at issue passed through the mail system, and thus, is was reasonable for the Court of Appeal to conclude that the

---

[21] *See Brady*, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

presence of third parties' DNA on the envelopes is not material on the issue of guilt or innocence.

Further, the Court of Appeal's determination of the facts in light of the evidence presented in the State court proceeding was reasonable. And, because the California courts reasonably concluded the 2011 conviction was relevant and not the product of a due process violation under *Brady*, it follows that the use of that conviction at Petitioner's 2013 trial does not constitute prosecutorial misconduct.

Therefore, for the reasons stated above, Petitioner's grounds four and five should be denied.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **July 6, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 13, 2018.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: June 19, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge