UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Paul Hupp,<br><br>                          Plaintiff,<br><br>v.<br><br>Kamala Harris,<br><br>                          Defendant. | Case No.:  16-CV-767-GPC (JLB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Paul Hupp ("Petitioner"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging his 2013 state court conviction ("2013 Conviction").  On June 19, 2018, the Magistrate Judge filed a Report and Recommendation denying the Petition.  (ECF No. 25.)  On August 24, 2018, Petitioner filed Objections and a supplemental Objection on October 31, 2018.  (ECF Nos. 31, 32, 34.)  On November 29, 2018, Petitioner filed a request for judicial notice in support of his Objections.  (ECF No. 36.)   On December 10, 2018, Petitioner filed another request for judicial notice in support of his Objections.  (ECF. No. 38.)  For the reasons stated below, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** and **DISMISSES** the Petition.

## I.     PROCEDURAL BACKGROUND

On January 13, 2012, the Riverside County District Attorney's Office charged

Petitioner with one count of simple stalking in violation of California Penal Code ("Penal Code") section 646.9(a); one count of stalking in violation of a court order in violation of Penal Code section 646.9(a); one count of making a criminal threat in violation of Penal Code section 422, and one count of misdemeanor disobeying a court order in violation of Penal Code section 166(a)(4). (Lodgment No. 8, ECF No. 6-29 at 8, 10-11[1]).

A jury trial was held from January 28, 2013 to February 19, 2013. (Lodgment No. 3, ECF No. 6-21 at 96-124.) The jury found Petitioner guilty of all charges. (*Id.* at 125.) On March 20, 2013, the trial court sentenced Petitioner to a three-year prison term, but suspended execution of the sentence, and granted him a one year jail sentence with five years of probation. (*Id.* at 127-28.)

On March 12, 2014, Petitioner filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment No. 5, ECF No. 6-26.) Petitioner requested reversal of his convictions based on (1) ineffective assistance of counsel for failing to object to the admission of Petitioner's contempt conviction; (2) repeated acts of prosecutorial misconduct; (3) due process violations in permitting impeachment with collateral matters. (*Id.*) Petitioner alternatively requested reversal of his simple stalking conviction as a lesser included offense of stalking in violation of a court order. On January 8, 2015, the state appellate court modified the judgment to dismiss Petitioner's simple stalking conviction, but otherwise found no error. (Lodgment 8, ECF No. 6-29.) Petitioner then filed a petition for review in the California Supreme Court in February 2015, which was denied on April 1, 2015. (Lodgment No. 9, ECF No. 6-30; Lodgment 10, ECF No. 6-31.)

On March 31, 2016, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition, ECF No. 1.) Petitioner asserts six grounds challenging his conviction:

---

[1] The pages numbers are based on the CM/ECF pagination.

(1) Petitioner claims that it was prosecutorial misconduct for the prosecutor to use Petitioner's 1982 misdemeanor conviction ("1982 Conviction") to "vouch for and bolster current charges" because the conviction was illegally obtained.

(2) Petitioner claims ineffective assistance of counsel in allowing Petitioner's 1982 Conviction to be used at trial as it was invalid and stale.

(3) Petitioner claims that it was misconduct for the prosecutor to use the 1982 Conviction because the conviction was "invalid for violating the 5th, 6th, and 14th Amendments."

(4) Petitioner claims prosecutorial misconduct due to failure to turn over exculpatory evidence in his 2011 contempt of court case "that was then used to vouch for and bolster" his 2013 Conviction.

(5) Petitioner claims prosecutorial misconduct arising from the use of his 2011 contempt conviction ("2011 Conviction") to "vouch for and bolster" his current conviction.

(6) Petitioner claims that it was misconduct for the prosecutor to spend over eight hours in closing argument referring to the "invalid" 1982 conviction.

(Petition, ECF No. 1 at 5, 7, 8, 10, 16.) On April 8, 2016, Respondent filed an Answer. (Answer, ECF No. 5-1.) On June 19, 2018, Magistrate Judge Jill L. Burkhart filed a Report and Recommendation Denying Petition for Writ of Habeas Corpus ("R&R"). (R&R, ECF No. 25.) On August 24, 2018, Petitioner filed Objections to Report and Recommendation. (Objection, ECF Nos. 31, 32.) On October 31, 2018, Petitioner filed a supplemental Objection. (ECF No. 34.) On November 29, 2018, Petitioner filed a request for judicial notice in support of his Objections. (ECF No. 36.) On December 10, 2018, Petitioner filed another request for judicial notice in support of his Objections. (ECF No. 38.) In both requests for judicial notice, he asks the Court to consider additional California state court cases and federal cases in support of his petition. The Court construes the requests for judicial notice as a notice of supplemental authority.

## II.    FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 29, 35 (1992) (state court findings are entitled to statutory presumption of correctness).  A habeas petitioner bears the burden of rebutting these facts by clear and convincing evidence.[2]  In the absence of any rebuttal, the following facts are taken from the California Court of Appeal's opinion on Petitioner's direct appeal, affirming in part and reversing in part the judgment of the trial court.[3]  (Lodgment No. 8; ECF No. 6-29.)

*Letters Sent by Defendant in 2000 and 2006*
*Concerning Freedman's 1998 Administrative Decision*

> In June 1998, victim Jeffrey Freedman, sitting as a pro tem administrative law judge (ALJ), presided over an administrative hearing to adjudicate an appeal filed by defendant to challenge a decision by the California Commission on Teacher Credentialing (Commission) denying defendant's application to obtain an emergency permit to be a substitute teacher. Freedman submitted a written proposed decision unfavorable to defendant, which was adopted by the Commission. Defendant filed a petition for writ of mandate in superior court, and in September 1999 the trial judge ruled in defendant's favor, finding that the Commission's findings did not support that defendant was unfit to teach and ordering the Commission to grant his application for a teaching permit.[4]

---

[2] While Petitioner generally disputes the state court's facts, Petitioner offers no evidence, clear and convincing or otherwise, to rebut the presumption that the state court findings are correct.  *See* ECF No. 31 at 2:4-8 (". . . JLB goes through the "boilerplate" format of regurgitating disputed "facts," lifted verbatim from the California District Court of Appeals ("DCA") "Opinion" [. . . .]"; *Id.* at 3:9-10 ("There are so many mistakes of "fact" and law in the RR that it is impossible for PETIONER [sic] to cover all of them in their totality.").  Thus, the Court gives deference to the state court's findings of fact.

[3] Footnotes 4 through 9 are taken directly from the California Court of Appeals opinion but have been renumbered consistent with this Order.

[4] The basis for the Commission's denial of defendant's teaching permit application arose from defendant's 1982 misdemeanor conviction for contributing to the delinquency of a minor. Defendant (then age 21) pled no contest to this offense based on an incident in which he and another 21-year-old male were in a car drinking beer with two girls ages 14 and 15. In 1987, defendant applied for a certificate of clearance from the Commission to allow him to obtain a teaching credential. Defendant failed to disclose his 1982 conviction in this application, and due to this nondisclosure and an assessment that his offense involved moral turpitude, the Commission declined to issue the certificate of clearance. In 1997, defendant obtained an expungement of his 1982 conviction. That same year, defendant submitted an application for an emergency substitute teaching permit; the Commission's executive director denied his application for the same reasons used to

Notwithstanding his ultimate success in the mandamus proceedings, defendant was extremely upset by Freedman's 1998 decision. In February 2000 and June 2006, defendant sent letters to Freedman at his home address expressing his sentiments in a derogatory and expletive-laden style. The February 2000 correspondence was in an envelope addressed to "Jeffery 'Dickhead' Freedman"; it included a handwritten note stating "Pull your head out of your ass!"; and it enclosed a copy of the 1999 mandamus order overturning the Commission's denial of defendant's teaching permit application. The June 2006 correspondence consisted of a lengthy typewritten letter which was addressed to "Bozo Freedman" and which contained numerous attacks on the 1998 decision and Freedman himself, stating such things as the decision was "one of the worst administrative law decisions in California history"; it was either a "set up" or Freedman was a "stupid motherfucker"; Freedman was a "cock sucking liar" and "cock sucking piece of shit"; Freedman misrepresented and made up evidence; based on the "lies and damage" Freedman had caused it was a miracle that "nothing has happened" to him; Freedman "better learn to treat people in a fair and decent manner—do you understand me bitch?"; and Freedman had "a beautiful home." Defendant included a copy of the 1998 administrative decision with handwritten comments referring to portions of the opinion and containing numerous additional derogatory statements and obscenities.[5]

Freedman testified that about four months before he received the June 2006 correspondence, he began receiving obscene phone calls at home from a caller who said Freedman's name and then used "a stream of obscenities" that matched the obscenities used in the June 2006 letter, stating for example, "'Hey motherfucking cocksucker. Hey, Jeff, you are a fucking cocksucker."

---

deny him the certificate of clearance in 1987; and defendant requested an administrative hearing to review the executive director's denial. After hearing the evidence presented at the administrative hearing, Freedman concluded denial of a substitute teaching permit was warranted because defendant's 1982 conviction involved acts of moral turpitude and directly related to his fitness to teach, and defendant failed to disclose this conviction in his 1987 application for a certificate of clearance.

[5] Defendant's handwritten annotations on the administrative opinion stated such things as "piece of bullshit"; "you mother fucking liar"; "more bullshit"; "piece of shit liar"; "wrong code section Einstein"; "total bull shit"; "petty crime asshole"; "hey dickhead—did they teach you the 1st am. in law school?"; "total bullshit pulled out of your ass"; "you fucking retard"; "ass clown"; "one thing your pea brain got right"; and "Hey Jeff Go Fuck! Yourself! You cock sucking loser!"

After receiving the June 2006 letter, Freedman applied for a restraining order prohibiting defendant from contacting him. In his written opposition to the restraining order application, defendant asserted that his letter was constitutionally protected free speech and it contained no threats, and repeatedly accused Freedman of fabricating information in the restraining order request and in his 1998 administration decision.[6] After holding a hearing, the court granted a three-year restraining order, which expired on July 7, 2009.

*Anonymous Letters Sent to Freedman in 2009 and 2010,*
*and 2010 Restraining Order Against Defendant*

Shortly after the expiration of the three-year restraining order issued in 2006, Freedman again started receiving letters, but this time they were anonymous. These anonymous letters form the basis for the stalking and other charges brought in the criminal proceeding at issue in this appeal.

The first anonymous letter, sent in September 2009 to both Freedman's home and office, consisted of a short typed note stating, "Hey you little cock sucking mother fucker-have you lied under oath recently you little fucking bitch? . . . [¶] Why don't you do the world a favor and get cancer and DIE. [¶] Because the world will be a much better place without a perjuring piece of shit like you in it." Freedman testified he was certain the letter was from defendant, explaining the language was similar to the 2006 letter from defendant; Freedman had testified at the hearing on his 2006 restraining order application; no one else had ever accused him of lying under oath; and he had "no feuds, no vendettas, no arguments with anybody on earth other than the letter that [he] got from [defendant] in 2006."

In March and September 2010, Freedman received additional anonymous typed letters at his home and office, which used similar language to call Freedman obscene names and accuse him of perjury.[7] Freedman obtained

---

[6] For example, defendant's opposition stated that Freedman "made numerous false statements and fabricated false evidence" in his 1998 administrative decision; Freedman's "fabrication of false evidence is well documented by the reversal of his administrative decision"; Freedman's claims in the restraining order application contain "false fabrication[s]"; Freedman "has a history of making false accusations [and] fabricating evidence"; and Freedman "tries to manipulate evidence."

[7] The March 2010 letter stated: "Your PERJURYING days are OVER you little cock sucking piece of shit. [¶] You can run but you can't hide [¶] Remember that you little bitch [¶] . . . [Freedman's home address]" The September 2010 letter stated: "What did I tell you bitch [¶] Your perjuring days are over you cock sucking mother fucker [¶] Remember that the next time you think about committing perjury you little fucking cock sucker."

16-CV-767-GPC (JLB)

a temporary restraining order (TRO) in March, but it was dissolved after multiple unsuccessful attempts to serve defendant. After receiving the September 2010 letter, Freedman sought legal assistance from the office of administrative hearings, which arranged for the Attorney General's office to assist him. Represented by a deputy attorney general, on October 14, 2010, Freedman obtained another TRO, with a hearing set for November 15, 2010. The TRO was served on defendant on October 27, 2010. Two days later, on October 29, another anonymous typed letter was sent to Freedman's home and office, stating, "What did I tell you fuck head, your perjuring days are over. [Freedman's home address]."

In a written response to Freedman's 2010 restraining order application, defendant claimed Freedman was attempting to "frame" him by making "false and unsupported accusations," which was Freedman's "pattern and practice" as shown by his "false and fabricated" 1998 decision which tried to deny defendant his "rights and livelihood to become a teacher."

Defendant failed to appear at the November 15, 2010 hearing, and the court imposed another three-year restraining order, to expire on November 14, 2013.

*Anonymous Letters Sent in 2011, Contempt Conviction,*
*and Other Actions by Defendant*

After issuance of the 2010 restraining order, additional anonymous typed letters were sent to Freedman's home and office in January and February 2011. The January letter stated: "Your perjuring days are over you cock sucking little bitch, remember that because there is not a rock on the face of this earth you are going to be able to hide under[.]" The February letter stated: "Your perjuring days are over motherfucker. [¶] Remember that you cock sucking piece of shit [Freedman's home address]."

After receiving the January and February 2011 letters, on July 12, 2011, Freedman filed an order to show cause (OSC) to hold defendant in contempt for violating the 2010 restraining order. Defendant appeared at an ex parte hearing on July 20, and the matter was set for a full hearing. About one week after the ex parte hearing, on July 28, 2011, another anonymous typed letter was sent to Freedman's home. The letter stated: "[Freedman's home address] you perjuring motherfucker [¶] your perjuring days are over cocksucker."

While the hearing on the contempt petition was pending, in October 2011 defendant filed a federal lawsuit against Freedman in which he complained

about the 1998 administrative proceeding, stating that Freedman framed him, improperly failed to disclose that he was a pro tem ALJ, made false and fabricated statements in his decision, and defrauded defendant out of "[l]iterally millions of dollars."

The contempt petition was adjudicated in November 2011, with defendant in attendance. The court found defendant in contempt, and ordered him to serve 25 days in custody, with a report date of January 3, 2012. On December 19, 2011, defendant's federal lawsuit against Freedman was dismissed with prejudice.

On December 27, 2011 (one week before defendant's date to report for custody), another anonymous typed letter was sent to Freedman's home, stating: "Your perjuring days are over you cocksucking motherfucker we'll see how much perjury you do with your brains splattered all over the wall the end will come at a time and place of my choosing you little fucking bitch[.]" Freedman contacted the police, and the police recommended that he and his wife leave town.

On January 13, 2012, the district attorney's office filed the stalking and other charges at issue in the case before us. Freedman received no more threatening letters after the December 2011 letter. Freedman testified that he was certain all the anonymous letters were sent by defendant, explaining that defendant was the only person who had made accusations that Freedman had committed perjury, ruined his life, and conspired to frame him.

*Defense*

Defendant did not dispute that he sent the letters to Freedman in 2000 and 2006 which referenced the 1998 administrative hearing, but claimed he did not send the anonymous letters that were sent starting in 2009.

Testifying on his own behalf, defendant stated that while his substitute teaching permit application was pending he had obtained teaching jobs and was doing well; the Commission's denial of his permit caused him to lose these jobs; and even after the superior court overturned the Commission's denial he was unable to get rehired in the teaching field because too much time had passed, he would have had to return to school to retake credentialing classes, and he lacked the funds to do this. Defendant maintained that because of the Commission's denial of his teaching permit, his career and future "had basically been destroyed." After losing his teaching career, he obtained a law degree from a school in another state so

he could learn to defend himself; the California State Bar initially granted him the required background clearance and he took the California bar examination several times; but in 2005 or 2006 when he did not pass the California bar examination and had to renew his clearance application, the clearance was denied.

Concerning his communications to Freedman, defendant explained that after the superior court judge overturned the Commission's denial of his teaching permit, he sent the 2000 letter because he wanted Freedman to know "what an idiot he was." He sent the 2006 letter because during this time period he re-read Freedman's administrative decision to get information for his bankruptcy case that he was filing, and he noticed how "bad" the administrative decision was now that he had a legal education. He acknowledged he was "very angry" and writing the letter made him feel less angry, but denied that he intended the letter to be a threat.

Defendant stated that during the time period of the anonymous letters, he was occupied with filing numerous lawsuits in which he represented himself about a variety of matters, and he filed these lawsuits to stand up for himself and others who could not defend their rights. He testified that he viewed the various judges who ruled against him as "lying," committing "perjury," and "railroad[ing] the poor and innocent," and he used derogatory language in pleadings and documents he filed concerning these judges because he was "blowing off steam" and the judges oppressed and "steamroll[ed] little people all the time" and he wanted them to know how he felt.[8] To support that he did not send the anonymous letters received by Freedman, he noted that he identified himself in these materials concerning the various judges. He stated that when he was upset with Freedman he sued him, and he had no reason to send Freedman anonymous letters and he had no idea who sent them.

*Jury Verdict and Sentence*

Defendant was charged with simple stalking between September 30, 2009 and December 29, 2011 (count 1, Pen. Code, § 646.9, subd. (a))[9]; stalking

---

[8] In these various pleading and documents, defendant stated such things as "'slimeball, piece of shit, ass clown judges'"; "'you cocksuckers are now on notice'"; "'the days of dirty judges violating the Constitution with impunity are over'"; "'civil unrest is going to start at the doorsteps of dirty slimeball judges who lie, commit perjury, and conspire with others to violate constitutional protections under color of authority'"; "I don't know how many dicks this pond scum, ass clown [judge] sucked to get appointed"; and "fuck you, [judge]."

[9] Subsequent unspecified statutory references are to the Penal Code.

9

in violation of a court order between October 29, 2010 and December 29, 2011 (count 2, § 646.9, subd. (a)); making a criminal threat between December 27 and 29, 2011 (§ 422); and misdemeanor disobeying a court order between December 27 and 29, 2011 (§ 166, subd. (a)(4)). The jury found defendant guilty as charged.

At sentencing, the court selected a three-year term for count 2 stalking in violation of a court order and a concurrent term for count 1 stalking, and stayed the terms for counts 3 and 4. The court suspended execution of the sentence and granted defendant probation conditioned on a one-year jail sentence.

(Lodgment 8, ECF No. 6-29 at 2-11.)

## III.   SCOPE OF REVIEW

### A. REPORT AND RECOMMENDATION STANDARD OF REVIEW

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because objections were made, the Court reviews the magistrate judge's findings and recommendations *de novo*. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

### B. AEDPA STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a court will not grant a habeas petition with respect to any claim adjudicated on the merits by the state court unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S 3, 8 (2002).

A federal court may grant habeas relief under the "contrary to" clause if the state court applied a different rule than the governing law established by the Supreme Court, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant

relief under the "unreasonable application" prong if the state court correctly identified the governing Supreme Court principle but unreasonably applied it to the facts of the case. *Id.* Additionally, the "unreasonable application" prong requires the state court's application of clearly established federal law to be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

A federal court uses the decision of the highest state court to make its habeas determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991). However, if no reasoned decision from the highest state court exists, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Id.* at 805–06. A state court need not cite Supreme Court precedent when resolving a habeas corpus claim, "[s]o long as neither the reasoning nor the result of the state-court action contradicts [Supreme Court precedent]." *Early*, 537 U.S. at 8.

## IV. DISCUSSION

Petitioner raises six grounds for relief in his 2013 Conviction. These six grounds fall within two broader claims of ineffective assistance of counsel and prosecutorial misconduct relating to the use of Petitioner's 1982 Conviction and 2011 Conviction (collectively "Prior Convictions") that he claims are invalid, void or illegal. All six grounds ask the Court to presume that Petitioner's Prior Convictions are invalid, void or illegal.

Because the Petition is challenging his Prior Convictions as void, the Court must first determine whether it has the subject matter jurisdiction to review Petitioner's claims for relief. If the Court has subject matter jurisdiction over the Prior Convictions, the Court must also determine whether the challenges are cognizable.

## A. SUBJECT MATTER JURISDICTION OVER THE PETITION

Neither party raised the issue of subject matter jurisdiction; instead, the Magistrate Judge *sua sponte* properly raised the issue of whether this Court has subject matter jurisdiction over the Petition. (ECF No 25 at 13.) The Magistrate Judge noted that

Petitioner's challenge to his 2013 Conviction "rest[s] on his ability to launch successful collateral attacks either on his 1982 misdemeanor conviction for contributing to the delinquency of a minor, or on his 2011 civil contempt of court conviction for sending Mr. Freedmen letters in violation of a November 2010 restraining order." (*Id.* at 13:11-15.) After a thoughtful analysis, the Magistrate Judge found that Petitioner was not "in custody" as to Petitioner's 1982 and 2011 Convictions and the Court lacks jurisdiction to consider the Petition. (ECF No. 25 at 14:12-16.)

In his Objections, Petitioner does not address the "in custody" requirement and whether the Court has subject matter jurisdiction over the case. Therefore, the Court may accept the recommendations of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1).

The requirement that a petitioner seeking habeas relief must be "in custody in violation of the Constitution or laws or treaties of the United States" is jurisdictional. *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2254(a)). Thus, federal courts have subject matter jurisdiction to consider habeas petitions by individuals challenging state court criminal judgments only if, at the time the petition is filed, the petitioner is "in custody" under the conviction challenged in the petition. *Id.* at 492. When a petitioner's sentence has fully expired, he is precluded from challenging that conviction because he is no longer "in custody" for purposes of federal habeas review. *Id.*

In *Lackawanna*, the Court held that the petitioner satisfied the "in custody" requirement because the petition could be construed as asserting a challenge to his current sentence as enhanced by an allegedly invalid prior conviction. *Lackawanna Cnty. Dist. Attorney v. Coss,* 532 U.S. 394, 401-02 (2001) (challenge to constitutionality of 1958 expired conviction construed as challenge to current 1978 sentences enhanced by 1958 conviction); *see also Brock v. Weston*, 31 F.3d 887, 889-91 (9th Cir. 1994) (challenge to expired 1974 assault conviction must be construed as challenge to current civil confinement predicated upon an enhancement due to the prior conviction); *Allen v. Oregon*, 153 F.3d 1046, 1048-49 (9th Cir. 1998) (challenge to prior state convictions

12

must be construed as collateral attack on current federal sentence enhanced by prior state convictions). The Ninth Circuit, in *Zichko v. Idaho*, 247 F.3d 1015, 1019-20 (9th Cir. 2001), also held that the "in custody" requirement is met where a prior conviction was a necessary predicate to his current conviction or sentence. In *Zichko*, the Ninth Circuit explained that "a habeas petitioner is in custody for the purposes of challenging an earlier, expired rape conviction, when he is incarcerated for failing to comply with a state sex offender registration law [,] because the earlier rape conviction is a necessary predicate to the failure to register charge". *Id.* at 1019. The Supreme Court clarified, however, that a petitioner satisfying the requirement is "in custody" for the purpose of the current conviction and not for the prior conviction. *See Lackawanna,* 532 U.S. at 401.

Here, Petitioner has not demonstrated that the "in custody" requirement has been met as to his 1982 and 2011 Convictions. Petitioner's 1982 Conviction was expunged in 1997 and he cannot be deemed to be in custody for that conviction. Moreover, he was never imprisoned for the 1982 Conviction. Petitioner is also no longer serving the sentence imposed pursuant to the 2011 conviction.[10] Therefore, Petitioner has not met the "in custody" requirement for the Court to exercise subject matter jurisdiction over his challenges to the Prior Convictions.

Petitioner also does not claim the Prior Convictions were used to enhance his current sentence but instead challenges them because they were introduced as evidence that was used against him that resulted in his current conviction. He also does not claim that his Prior Convictions were necessary predicates to his current conviction. Accordingly, the Court concludes that it does not have subject matter jurisdiction over the claims challenging the Prior Convictions. Alternatively, even if the Court had subject matter jurisdiction, the Court concludes that his claims based on challenges to his Prior Convictions are not cognizable under *Lackawanna*.

---

[10] The R&R explained that Petitioner served 25 days in jail for his civil contempt conviction beginning in early January 2012. (Dkt. No. 25 at 14 n. 12.)

16-CV-767-GPC (JLB)

## B. PETITIONER'S CHALLENGES TO HIS PRIOR CONVICTIONS AS COGNIZABLE

Next, the R&R raised the issue *sua sponte* regarding whether Petitioner's challenges would be cognizable under *Lackawanna*.  (ECF No. 25 at 16-18.)  The Magistrate Judge again found that Petitioner could not meet the requirements and recommended denying the Petition.  (*Id.* at 18:24-27.)

In his Objections, Petitioner contends that *Lackawanna* is inapplicable because it dealt with "convictions" and because his Prior Convictions were invalid or void, they cannot be considered "convictions."  (ECF No. 31 at 10:8-15.)  Petitioner also asserts that the government is required to prove the validity of the prior convictions.  (*Id.* at 7:1-3.)

Even where a petitioner is "in custody" for the purpose of § 2254 review, the Supreme Court recognizes a general bar on challenging a current conviction on the basis that the prior conviction was unconstitutionally obtained.  *See Lackawanna*, 532 U.S. at 403-04.  In *Lackawanna,* the United States Supreme Court held:

> Once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.* (internal citation omitted).  The Court noted three exceptions.  First, the general bar does not apply if the "prior conviction . . . was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed. 2d 799 (1963)."  *Id.* at 404.  Second, the plurality in *Lackawanna* suggested another exception to the general bar where a petitioner obtains "compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner."  *Id.* at 405.  The third exception is where state courts had "'without justification, refuse[d]

to rule on a constitutional claim that has been properly presented' to them." *Id.*; *Dubrin v. California*, 720 F.3d 1095, 1099 (9th Cir. 2013) (recognizing exception to *Lackawanna* where state courts had, "'without justification, refuse[d] to rule on a constitutional claim that ha[d] been properly presented' to them").

Here, Petitioner does not specifically argue that any of the exceptions to *Lackawanna* apply and the R&R correctly explains why the exceptions do not apply. (ECF No. 25 at 17-18.) The R&R explained that the Prior Convictions were not uncounseled in violation of *Gideon v. Wainwright,* 372 U.S. 335 (1963). Even though Petitioner claims that his 1982 Conviction was uncounseled, an uncounseled misdemeanor conviction for which the defendant was not imprisoned[11] does not violate the Sixth Amendment. *Nichols v. United States*, 511 U.S. 738, 743 (1994) ("In *Scott v. Illinois*, 440 U.S. 367 [ ] (1979), we held that where no sentence of imprisonment was imposed, a defendant charged with a misdemeanor had no constitutional right to counsel."). Therefore, the *Gideon* exception does not apply.

The R&R also concluded that Petitioner was not deprived of an opportunity for review. (ECF No. 25 at 17-18.) As noted in the R&R, Petitioner, while he argued that his 2011 Conviction was not appealable, he filed habeas corpus petitions in state and federal court. This is noted in the Petition. (ECF No. 1 at 12.) On December 14, 2011, Petitioner filed a petition for writ of habeas corpus contesting his 2011 conviction. (*Hupp v. Harris*, Case No. 11-cv-02909-IEG-RBB, ECF No. 1.) On December 16, 2011, the district court dismissed the habeas petition without prejudice after finding that Petitioner did not meet the "in custody" requirement and had failed to exhaust his state court remedies. (11-cv-02909, ECF No.7.) The court acknowledged Petitioner's claims that the judgment of contempt of court was not appealable, but notified Petitioner that habeas review was available in the state court system. (*Id.* at 3:8-16.)

---

[11] Petitioner received no jail time and no probation for his 1982 conviction. (ECF No. 6-8 at 46 ("the entire punishment that Mr. Hupp was given was a fine totaling $250 or thereabouts", 55.)

On January 3, 2012, Petitioner filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition"). (11-cv-02909, ECF No. 11.) In his Amended Petition, Petitioner conceded that the California Supreme Court had not yet reviewed his petition, but asserted that they had sufficient time to rule.[12] (*Id.* at 4.) Thus, Petitioner claimed they had constructively denied his petition. (*Id.*) On January 12, 2012, the Amended Petition was again dismissed without prejudice for failure to exhaust his state remedies. (11-cv-02909, ECF No. 13.) Petitioner did not file any subsequent amended petitions in that case. Instead, Petitioner filed a petition under a new case, *Hupp v. San Diego Superior Court et als.*, Case No. 12-cv-274-WQH-JMA, ECF No. 1). Again, the petition was dismissed without prejudice for failure to comply with procedural rules. (*Id.*, ECF No. 5.) Therefore, the third exception to *Lackawanna* does not apply.

In sum, the Court concludes that Petitioner's challenges to his Prior Convictions are not cognizable under *Lackawanna* and they are presumptively valid. *See Lackawanna*, 532 U.S. at 403-04. Therefore, because Ground Four, alleging prosecutorial misconduct due to a failure to turn over exculpatory evidence in his 2011 contempt of court case that was then used as evidence to support his 2013 Conviction, rises or falls based on the validity of the underlying 2011 Conviction, the Court DENIES the claim in Ground Four. Similarly, the Court also DENIES Ground Three claiming prosecutorial misconduct for the prosecution to use the unconstitutionally obtained 1982 Conviction to support his 2013 Conviction because the claim rises or falls based on the validity of the underlying 1982 Conviction.

However, the Court considers the First, Second, Fifth and Sixth Grounds based on prosecutorial misconduct arising from the prosecutors use of his Prior Convictions to "vouch for and bolster" his 2013 conviction and claim of ineffective assistance of counsel in allowing the 1982 conviction to be used at trial. In liberally construing Petitioner's

---

[12] According to Petitioner, the California Supreme Court had received the petition on December 28, 2011 at 10:00 a.m.

challenges, even if the Prior Convictions are presumed valid, the Petition plausibly alleges claims under § 2254.

## C. PETITIONER'S CHALLENGES TO HIS 2013 CONVICTION

The Court considers the merits of Petitioner's challenge to his 2013 Conviction with the presumption that both of his Prior Convictions are valid. The Court considers the extent to which the Prior Convictions were used in determining whether any prosecutorial misconduct or ineffective assistance of counsel occurred.

### 1. Prosecutorial Misconduct in the Use of Evidence of Petitioner's Prior Convictions.

Grounds One, Five and Six relate to the prosecutor's use of the evidence of Petitioner's Prior Convictions. Petitioner claims that the use of his Prior Convictions and the eight hours spent during closing arguments discussing his 1982 Conviction constituted prosecutorial misconduct. (ECF No. 1.)

"On habeas review of a prosecutorial misconduct claim, [a court] may grant relief only if the misconduct rises to the level of a due process violation—not merely because [the court] might disapprove of the prosecutor's behavior." *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010). A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 193 (1986). Petitioner has the burden to prove the prosecutor's comments "'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Furthermore, the alleged misconduct must be reviewed in the context of the entire trial. *Donnelly*, 416 U.S. at 643.

### a. Permissible Use of Evidence of Prior Acts and Crimes

On Grounds One and Five, Petitioner contends that his Prior Convictions were impermissibly used to "vouch for and bolster" his 2013 Conviction. (ECF No. 1.)

Respondent countered that facts relating to the 1982 Conviction were only introduced by the prosecutor on cross-examination after Petitioner testified about the

1982 Conviction. (ECF No. 5-1 at 10-12.) As to both Prior Convictions as well as all legal proceedings offered into evidence, Respondent contends that the jury was instructed to consider the evidence only to determine the existence or absence of a motive. (*Id.* at 25:13-19.)

The Court of Appeal found that the prosecution's cross-examination of Petitioner regarding the 1982 Conviction, though lengthy, "stayed within the bounds of permissible cross-examination on matters raised by [Petitioner] in direct examination." (Lodgment 8 at 21, ECF No. 6-29.) The court explained that the prosecutor's questioning and arguments regarding the 1982 Conviction were in response to Petitioner's direct testimony about the facts giving rise to the 1982 Conviction. (Id. at 16, 19-20.) The Court of Appeal also found that the evidence relating to Petitioner's 2011 was highly relevant to the issue of motive and that the limiting instruction to the jury prevented improper use of the Prior Convictions. (*Id.* at 14.)

The Magistrate Judge noted that it was Petitioner who initially testified at length on direct examination about the facts surrounding his arrest and conviction in 1982 in an attempt to explain his reasons for sending letters to Mr. Freedman in 2000 and 2006. (ECF No. 25 at 28:10-20.) The Magistrate Judge consequently found that the Court of Appeal had reasonably found there was no prosecutorial misconduct because the prosecutor's questioning on cross-examination was within the scope of Petitioner's direct examination. (ECF No. 25 at 30:10-20.)

In his Supplemental Brief, Petitioner counters that in the absence of valid convictions, there was no lawful authority to use the evidence surrounding his Prior Convictions. (ECF No. 31 at 13:21-22.) Petitioner also asserts that there were no limiting jury instructions as to his Prior Convictions. (ECF No. 34 at 7:13-14.)

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see also* Cal Evid. Code § 1101(a). However, "[t]his evidence may be admissible for another purpose, such as proving

16-CV-767-GPC (JLB)

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also* Cal. Evid. Code § 1101(b). Where evidence of the facts and circumstances of a prior crime are admissible to show motive, the evidence is not rendered inadmissible merely because the conviction is vacated. *See Morris v. Mathews*, 475 U.S. 237, 256-57 (1986) (no reason to believe vacating robbery conviction would have precluded evidence of robbery to show motive and opportunity for murder). Moreover, a prosecutor may cross examine on anything "reasonably suggested" by the direct examination. *United States v. Martinez*, 967 F.3d 1343, 1347 (9th Cir. 1992) (quoting *United States v. Havens*, 446 U.S. 620, 627 (1980)); *Michelson v. United States*, 335 U.S. 469, 485 (1948) ("we think defendants in general and this defendant in particular have no valid complaint at the latitude which existing law allows to the prosecution to meet by cross-examination an issue voluntarily tendered by the defense.").

Here, the prosecution's use of the 1982 Conviction during cross examination and use of the 2011 Conviction to establish motive was not a violation of U.S. Supreme Court precedent.

Moreover, despite Petitioner's assertion that no limiting instructions were given as to his Prior Convictions, the record demonstrates the contrary. The first instruction addresses Petitioner's past legal proceedings generally:

> You have heard testimony as to a number of separate legal proceedings that may have been connected in some way to one or more of the parties who have testified. You are not to consider in your deliberations the appropriateness of any of those proceedings or concern yourselves with their outcome. The facts surrounding those cases may only be considered in your deliberations for the limited purpose of determining the existence or absence of motive, or for other limited purposes specified elsewhere in the instructions provided by the court.

(Lodgment 4, Part 4, ECF No. 6-25 at 195.) The second specifically addresses Petitioner's 2011 contempt conviction:

> You have heard testimony related to a prior finding of civil contempt against Mr. Hupp, which may have involved some of the conduct alleged in this criminal case. The ruling in that contempt hearing was based upon different law and different evidence than that which applies to and has been/is being

presented in this criminal case. The prior finding of civil contempt is not to be considered as evidence that the charged crimes have been committed, or in determining whether the government has met its burden of proof beyond a reasonable doubt as to each of the crimes charged in this case. You are to make your own independent determination of the facts presented in this proceeding, and apply the law as instructed by this court, in coming to your decision.

(Lodgment 4, Part 4, ECF No. 6-25 at 196.)  Jurors are presumed to follow their instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Petitioner offers no evidence that these instructions were not followed.

It was reasonable for the Court of Appeal to conclude that the evidence of Petitioner's Prior Convictions were admissible to cross examine Petitioner and establish motive, and Petitioner has failed to demonstrate that the prosecutor's comments about his Prior Convictions rendered the trial "fundamentally unfair." *See Darden*, 477 U.S. at 193.  Thus, the state court's decision was not contrary to nor an unreasonable application of Supreme Court law.  *See Bell*, 535 U.S. at 694.  For the reasons stated above, this Court **ADOPTS** the Magistrate Judge's R&R and **DENIES** habeas relief on Grounds One, Three and Five of the Petition.

### b. Eight Hours Spent Discussing 1982 Conviction in Closing

On Ground Six, Petitioner claims that the prosecutor spent over eight hours in closing argument referring to the 1982 Conviction.  The record reveals the contrary.  The trial transcripts show that the prosecution's closing argument and rebuttal argument took, at most, four hours total.  (Lodgment No. 3 at 119-22, ECF No. 6-21.)  Further, the prosecution spent little time discussing the 1982 conviction, and instead spent a significant amount of time highlighting the similarity of the threatening letters.  (Lodgment 1, Part 14 and Part 15; ECF Nos. 6-14 and 6-15.)

Because Petitioner's claim is premised on a misstatement of the record, the Court finds that Petitioner does not meet his burden of proving that the prosecutor's discussion of Petitioner's 1982 Conviction "'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *See Darden*, 477 U.S. at 181.  Therefore,

this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** habeas relief Ground Six.

## 2. Ineffective Assistance of Counsel

Ground Two of the Petition claims ineffective assistance of counsel in allowing Petitioner's 1982 misdemeanor conviction to be used at trial.

The state court did not review this issue because Petitioner did not raise an ineffective assistance of counsel claim as to the use of his 1982 Conviction in his appeal to the state court. Instead, Petitioner's only claim of ineffective assistance of counsel before the state court related to the use of his 2011 Conviction. (Lodgment 5 at 16.) On this basis, the Magistrate Judge found that Petitioner did not meet the exhaustion requirement with respect to this issue. Nonetheless, the Court may deny a petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Ninth Circuit has explained that a "federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

A defendant claiming ineffective assistance of counsel ("IAC") must show both (1) deficient performance under an objective standard of reasonableness and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome"); *see Richter*, 131 S. Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable").

Ground Two is not only procedurally barred for Petitioner's failure to raise it on direct appeal, but also fails on the merits. As discussed above, evidence of Petitioner's 1982 Conviction was permissibly raised because on direct examination, he first raised the facts surrounding the 1982 Conviction to explain his version of the facts. Therefore, Petitioner has not demonstrated that his counsel was deficient for failing to object, and the Court ADOPTS the Magistrate Judge's R&R and DENIES habeas relief on Ground Two of the Petition.

## V. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing section 2254 cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If this Court does not issue a certificate of appealability, this decision may not be appealed, 28 U.S.C. § 2253(c)(1)(A), and this Court may not issue a certificate of appealability unless Petitioner makes a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(1)(B)(2). To prove a substantial showing of denial of a constitutional right, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Petitioner does not make a substantial showing of the denial of a constitutional right, and it is unlikely that reasonable jurists would find this Court's assessment debatable or wrong. Therefore, the Court DENIES a Certificate of Appealability.

## CONCLUSION

This Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** and **DISMISSES** the Petition for Writ of Habeas Corpus and **DENIES** a Certificate of Appealability. The Court also **DENIES** as moot Petitioner's motion for a

16-CV-767-GPC (JLB)

status conference or ruling on the Report and Recommendation.  (ECF No. 40.)  The Clerk of Court shall close the case.

      IT IS SO ORDERED.

Dated:  May 13, 2019

Hon. Gonzalo P. Curiel
United States District Judge